DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America,  )
                                                   )  CASE NO. 5:11 CR 47
            Plaintiff,  )
                                                   )
      v.                              )  MEMORANDUM OPINION AND
                                                   )  ORDER
Remus E. Newsome,  )
                                                   )
           Defendant.  )
                                                   )

      The defendant filed a motion to suppress (Doc. 14) the seizure of evidence from his residence by the Akron Police Department on November 14, 2010.  The defendant contends that the seizure of evidence violated his rights under the Fourth Amendment to the Constitution.

      The Court conducted an evidentiary hearing on April 20, 2011 and a subsequent evidentiary hearing on May 9, 2011.  Issues abound in this case relating to the procedures followed by the officers of the Akron Police Department and deputy clerks in the Akron Municipal Court.  Officer Bassett of the Akron Police Department was offered by the government in opposition to the motion to suppress.  At the conclusion of the evidentiary hearing conducted on May 9, 2011, Detective Hill of the Akron Police Department who was the complainant with respect to arrest of the defendant, provided testimony with regard to his instructions to Officer Bassett of the Akron Police Department who conducted the subsequent arrest of the defendant as hereinafter described.

      The defendant lives in an apartment at 822 S. Jenkins Boulevard in Apartment B in Akron, Ohio.  On the 12th day of November, 2010, a complaint was filed by Detective Hill of

(5:11 cr 47)

the Akron Police Department alleging that the defendant caused or attempted to cause physical harm to Lawrence Caver by means of a deadly weapon, i.e., a firearm in violation of O.R.C. Section 2903.11A2.

The complaint was signed by Detective Hill of the Akron Police Department and sworn to and signed in the presence of Deputy Clerk Peggy Bulan on the 12th day of November, 2010.

The testimony developed in the suppression hearing revealed that it is the practice of the clerk's office of the Akron Municipal Court to include on a single page what is considered by the clerk's office to be a complaint for an arrest coupled with a second phase of the document which is, in the opinion of the Clerk of Courts, an arrest warrant and the third phase of the document is entitled "Returns."  A copy of the single-page document, including the complaint, and what purports to be an arrest warrant is attached hereto as Appendix I.

The officers of the Akron Police Department, after determining that the defendant was probably located at the above apartment, proceeded to the apartment and knocked on the door announcing their presence.  The defendant refused to open the door to the apartment until officers of the Akron Police Department began efforts to remove the door and enter the apartment.  The defendant then opened the door, the police officers entered, handcuffed the defendant, and then, according to Officer Bassett, discovered in plain view various items of controlled substances, such as crack cocaine and heroin.

Prior to the entry of the arrest warrant, an affidavit for a search warrant had been prepared, but not presented to a judicial officer.  After the entry into the defendant's apartment and the observation of the controlled substances, Officer Bassett then visited Municipal Judge

2

(5:11 cr 47)

Holcomb of the Akron Municipal Court and presented an affidavit requesting a search warrant

for the defendant at the residence of 822 S. Jenkins Boulevard.

The affidavit submitted by Officer Bassett in support of the request for a search warrant

is attached hereto as Appendix II.  Judge Holcomb issued the search warrant and it is attached

hereto as Appendix III.

After Officer Bassett had entered and arrested the defendant at his residence, Officer

Bassett printed in ink at paragraph six to the affidavit for the search warrant additional language

which stated in full as follows:

> 6.      Affiant requests a search of illegal drugs due to illegal drugs found
> in plain view

Judge Holcomb then issued the search warrant.  The search warrant was printed, except

for the addition of the phrase "illegal drugs" as an addition to the following phrase:

> PROPERTY TO BE SEARCHED FOR AND SEIZED: Firearms,
> weapons and documents

As a part of the goods seized, the searching party removed a safe from the premises of

the defendant and subsequently opened the safe, notwithstanding the fact that the search warrant

did not independently justify or support a search or seizure of the safe.

Armed with the search warrant issued by Judge Holcomb, officers of the Akron Police

Department completed a search of the defendant's apartment and removed items one through

twenty-one as described in the return following the execution of the search warrant.

The searching officers also located a safe on the premises of the defendant.  The safe was

removed and delivered to the Akron Police Department where it was opened.  The items found in

3

(5:11 cr 47)

the safe are listed as items 22-25 on the return of the search warrant.[1]

ISSUES ADVANCED BY THE DEFENDANT
IN SUPPORT OF THE MOTION TO SUPPRESS

A.      Was the deputy clerk of the Akron Municipal Court justified in her finding that the complaint filed by Detective Hill of the Akron Police Department supported a determination that an arrest warrant should issue for the defendant?

The testimony developed by the defendant indicated that police officers of the Akron Police Department routinely approach the Clerk's Office for Akron Municipal Court and file complaints charging criminal conduct and requesting the issuance of an arrest warrant.  The testimony suggested that requests for the issuance of arrest warrants submitted by law enforcement are rarely rejected.

Testimony also indicated that if a non-law enforcement officer attempted to file a complaint charging criminal conduct a totally different process followed.  In sum, the routine followed by the clerk's office when a law enforcement officer requested a arrest warrant was not followed where the complainant was a non-law enforcement officer.

Counsel for the defendant charges that the complaint filed in this case was a bare-boned allegation of criminal conduct and was insufficient to support a finding of probable cause to justify the issuance of an arrest warrant.  Counsel for the defendant further contends that the complaint failed to include sufficient allegations of fact to justify the issuance of an arrest warrant.  Continuing, counsel for the defendant contends that the affidavit signed by Officer Hill in support of the issuance of the arrest warrant was not incorporated into the allegations in the

---

[1]The three-page return listing the items taken pursuant to the search warrant is attached hereto as Appendix IV.

4

(5:11 cr 47)

complaint, and thus, the issuing clerk was not justified in issuing the arrest warrant.

Government's exhibit five, attached as Appendix V, was signed by Detective Hill.  He testified

that he provided government's exhibit five to Deputy Clerk Peggy Bulan prior to her decision to

issue the arrest warrant.  The affidavit provides in part that the defendant, Rufus E. Newsome, on

or about the 25th day of September, 2010 did pull up in a maroon vehicle with tinted windows,

exit vehicle and fired multiple shots at the victim Lawrence D. Caver, B/M 28, with a firearm.

Newsome was identified in a photo array as the person who fired the gun at Carver.

Against that background, the defendant contends that the information set forth in

government's exhibit five, and attached hereto as Appendix V, was not incorporated into the

complaint and thus should not be considered by the Court in determining whether the deputy

clerk was justified in issuing the arrest warrant.

In that context, Ohio Criminal Rule 4A provides as follows:

> (A)    **Issuance**
> (1)    **Upon complaint** If it appears from the complaint, <u>or from
> an affidavit or affidavits filed with the complaint</u>, that there is
> probable cause to believe that an offense has been committed, and
> that the defendant has committed it, a warrant for the arrest of the
> defendant, or a summons in lieu of a warrant, shall be issued by a
> judge, magistrate, clerk of court, or officer of the court designated
> by the judge, to any law enforcement officer authorized by law to
> execute or serve it.  (Emphasis added.)
>
> The finding of probable cause may be based upon hearsay in whole
> or in part, provided there is a substantial basis for believing the
> source of the hearsay to be credible and for believing that there is a
> factual basis for the information furnished.  Before ruling on a
> request for a warrant, the issuing authority may require the
> complainant to appear personally and may examine under oath the
> complainant and any witnesses.  The testimony shall be admissible
> at a hearing on a motion to suppress, if it was taken down by a

5

(5:11 cr 47)

court reporter or recording equipment.

The Court finds under the provisions of Ohio Criminal Rule 4Athat the Deputy Clerk Peggy Bulan was justified in considering the affidavit submitted by Detective Hill in determining whether there was probable cause to issue an arrest warrant.  Specifically, the court finds that Peggy Bulan was justified in finding that there was probable cause to believe that an offense was committed and that the defendant had committed it after considering the language of the complaint and the affidavit.  (Government's Exhibit V- Appendix V).

Consequently, the Court finds that the decision of Deputy Clerk Peggy Bulan to issue what she believed to be an arrest warrant based on the materials submitted by Detective Hill passes constitutional muster.  The Court rejects the defendant's contention that the process followed by Peggy Bulan in her decision to issue what she believed to be an arrest warrant violated Ohio Criminal Rule 4A.

B.       Did what the government contends was an arrest warrant constitute an arrest warrant?

The Court begins its analysis with the fact that the Ohio Rules of Criminal Procedure include proposed forms.  Specifically, Form VII, attached to the Ohio Rules of Criminal Procedure sets forth the suggested form to be used where the decision is made to issue a warrant for arrest based upon a complaint.  A copy of Form VII is attached hereto as Appendix VI.   The form provides a signature line for the person, be it a judge, an officer designated by a judge, a clerk, or a deputy clerk issuing the arrest warrant.  In the case at hand, the single-page document utilized by the clerk's office for the Akron Municipal Court fails to provide for a signature line for whatever person made the decision to issue a warrant for the arrest of the designated person.

6

(5:11 cr 47)

Counsel for the government contends that the fact that the deputy clerk in the Akron

Municipal Clerk's office initialed what purports to be an arrest warrant complies with the Ohio

Rules of Criminal Procedure.  This Court disagrees.

Consequently, the Court finds that when Officer Bassett led the arresting party on

November 14, 2010 to the residence of the defendant, there was no arrest warrant to execute.

C.      Does the absence of a properly executed arrest warrant justify a suppression of
the contraband observed by the arresting officers at the residence of the defendant on November
14, 2010?

The concept of suppression has been the hallmark of criminal jurisprudence dating back

to *Mapp v. Ohio,* 367, U.S. 643 (1961).  However, since *Mapp v. Ohio*, the courts have

recognized that the fact of a Fourth Amendment violation does not automatically require

suppression of the fruits of the violation.  *See*, for instance, *Massachusetts v. Sheppard*,

468U.S.981 (1984)[2], *Arizona v. Evans*, 514 US 1 (1995)[3], *United States v. Master*, 614 F.3d 236

---

[2]This case resulted in a determination that where police officers were advised by the
judge that all necessary clerical changes had been made in a defective warrant form and
took every step that could reasonably be expected of them, there was an objectively
reasonable basis for the police officers' mistaken belief that the search warrant authorized
the search which the officers conducted.  As a consequence, the Supreme Court in a
decision written by Justice White, with three dissenting opinions, ruled that the
exclusionary rule would not be applied to the evidence seized since the officers
conducting the search acted in an objectively reasonable reliance on a warrant issued by a
detached and neutral magistrate even though the warrant was subsequently determined to
be invalid.

[3]In a 7-2 decision written by Chief Justice William Rehnquist, the court determined that
the exclusionary rule does not require suppression of evidence seized in violation of the
Fourth Amendment where erroneous information resulted in clerical errors of court
employees.  Continuing, Chief Justice Rehnquist declared "the exclusionary rule is a
judicially created remedy designed to safeguard against future violations of Fourth
Amendment rights through its deterrent effect.  However, the issue of exclusion is
separate from whether the amendment has been violated.  The amendment does not
expressly preclude the use of evidence obtained in violation of its commands and

(5:11 cr 47)

(6th Cir. 2010)[4], *United States v. Buford*, 632 F.3d 264 (6th Cir[5]. 2011).

These cases have in common the proposition that the Fourth Amendment violation did not require suppression of the fruits of the search or arrest.

The question that remains in this case is whether the flawed process involving the arrest of the defendant and the search of his premises requires suppression of the fruits of the arrest and the ensuing search.

As the law respecting the use of suppression as a sanction has developed, it is apparent that the violation of a defendant's Fourth Amendment rights does not automatically require the sanction of suppression. The Court has already declared that what was thought to be an arrest warrant failed because there was no signature of the person purporting to issue the arrest warrant

---

exclusion is appropriate only where the rule's remedial objectives are thought most efficaciously served.... The exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees.... Finally, there is no basis for believing that application of the exclusionary rule will have a significant effect on court employees responsible for informing the police that a warrant has been quashed."

[4]In this case, the Sixth Circuit remanded to the district court the question of whether suppression should be the result of a violation of defendant's Fourth Amendment rights. In so remanding, Judge Clay writing for the Circuit declared "While it appears at first blush that suppression might be inappropriate in this case, we will remand the case to the district court for the purposes of reexamining the facts and balancing the interest as required by *hearing*. When this matter was previously before the district court, the court never made any factual findings related to the conduct of the officers, finding instead that the warrant did not violate Defendant's Fourth Amendment rights. As stated above, we overrule that determination on remand, the district court "must consider the actions of all the police officers involved," not merely Dyer. *Herring*, 129 S.Ct. at 699.

[5]Buford involved the search of a passenger in a stopped automobile. The Circuit Court reversed the district court's granting the defendant's motion to suppress and declared that the judicially-created exclusionary rule does not apply and suppression is not warranted.

(5:11 cr 47)

and the initials of the deputy clerk on the form suggested to constitute an arrest warrant failed as

a matter of law to constitute an arrest warrant.

      The issue that results is whether Detective Hill who advised Officer Bassett that an arrest

warrant had been issued knew or should have known that the document thought to be an arrest

warrant by the clerk and deputy clerk of the Akron Municipal Court was in fact not an arrest

warrant.  It is well established that the officer who executes an arrest warrant need not have the

arrest warrant in his possession provided he has been informed that an arrest warrant exists for

the arrest of the designated person.  In this case, Officer Bassett was informed by Detective Hill

that an arrest warrant had been issued.  After considering the direct examination of Detective

Hill, a copy of which is attached hereto as Appendix VII, the Court finds that there is no basis

for holding that Detective Hill knew or should have known that a defective arrest warrant had

been issued.  Consequently, the Court finds that there is no basis on which to apply the sanction

of suppression as to the drugs and guns found in the search of the defendant's premises on

November 14, 2010, except as to the contents of the safe seized from the premises, removed

from the premises and subsequently broken into by law enforcement officers revealing the

contents as revealed on page 3 of the Inventory, i.e., Appendix IV.

      D.     Did the handwritten addition to the affidavit for the search warrant of the
defendant's premises requesting the seizure of "illegal drugs" and "discovered in plain view"
support the issuance of the search warrant by Judge Holcomb with respect to the seizure of
illegal drugs?

      The issue that arises is whether the use of the phrase "illegal drugs" in the affidavit is so

ambiguous as to negate the legality of the subsequent issue of the search warrant and the

resulting seizure of crack cocaine and heroin.  It appears that the seizure of some of the heroin

(5:11 cr 47)

and crack cocaine was justified as being within plain view at the time the Akron Police Department officers entered the defendant's premises.  Clearly, the heroin and crack cocaine observed in plain view upon the entry into the defendant's residence are admissible whether or not the eventual-issued search warrant properly included crack cocaine and heroin.  As for the crack cocaine and heroin seized in reliance upon the search warrant issued after the original entry into the defendant's premises on November 14, 2010, the Court concludes that the subsequent seizure based upon the poorly drawn affidavit requesting the court's permission to seize "illegal drugs" and "found in plain view" meets the requirements of the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1984) and its progeny.  Consequently, the motion to suppress the crack cocaine and heroin not in plain view but seized pursuant to the subsequently issued search warrant is DENIED.

E.     Was the content of the directives in the search warrant sufficient to justify the removal of the safe from the premises of the defendant?

The Court answers that question in the negative.  The search warrant did not describe a safe.  The subsequent advice of the Law Department for the City of Akron advising the officers that they could seize, remove from the defendant's premises, and open and destroy the safe was beyond the mandate of the search warrant.  The advice of the Law Department for the City of Akron does not support the decision to seize, remove and open the safe.  Consequently, the

10

(5:11 cr 47)

motion to suppress the contents of the safe is GRANTED.

Conclusion

The defendant's motion to suppress is DENIED in all respects, except for the seizure of the contends of the safe removed from the defendant's premises, and as listed in the return on page 3 as indicated in Appendix IV.


IT IS SO ORDERED.


  May 10, 2011                    /s/ David D. Dowd, Jr.
Date                            David D. Dowd, Jr.
                                U.S. District Judge